We're here for argument in case number 22-11941, Paul Anthony Brown v. Secretary of the Florida Department of Corrections. We have Ms. Ahmed here for Mr. Brown. Did I pronounce it correctly? Okay. Good morning. And Ms. Meacham here for the state, right? Okay. You know the lighting system, when the yellow light goes on, that means that your time is starting to draw to a close, so begin to wrap up. If we take you beyond the red light, then don't worry about it. You'll be on our time and not yours. You'll get some questions, I presume, from the panel members throughout, so just engage in a conversation with us and try to answer the questions as best you can. Ms. Ahmed, whenever you're ready. May it please the Court. Madam Counsel, once again, good morning. My name is Raheel Ahmed, and I, along with my co-counsel, Ms. Tenny Beth Martin, represent the petitioner appellant, Mr. Paul Anthony Brown. Let me begin by saying that this is a case that demonstrates how Florida failed to prioritize seeking the truth over their pursuit of a guilty verdict and a sentence of death. Specifically, Florida failed in their Brady obligations prior to trial and in post court calls him, in their 2018 opinion, the only eyewitness to the murder who painted Mr. Brown as the most culpable in the case. One of the baffling things for me in this case procedurally is that, at least on my personal side, and I don't speak for my colleagues, I still can't figure out what the state knew and when it knew it. There hasn't been an evidentiary hearing on those issues. I know that whatever name we use for the witnesses, let's use Keenum for my purposes, we know that he pled guilty to second-degree murder several years before Mr. Brown's trial, right? That part is public record, we know that. But the record, at least as far as I've been able to tell, doesn't indicate what the state knew about Mr. Keenum, and again I'll use that last name for him, at the time of his guilty plea. We don't know what the state knew about him at the time of Mr. Brown's trial. And we don't exactly know, although we have a little more information, we don't exactly know what the assistant state attorney learned right before and during the middle of the evidentiary hearing, the first post-conviction evidentiary hearing. And finally, the record doesn't indicate exactly what the assistant state attorney turned over to Mr. Brown's collateral counsel during the first post-conviction evidentiary hearing. All of that is sort of unknown to me and that creates a problem in terms of being able to assess cause and prejudice and the similar Brady-Giglio prompts. May I ask a question just as a follow-up? Yes, sir. My understanding, though, is in the record that Exhibit 4, which was the copy of the certified judgment and sentence, that was introduced into the record in the evidentiary hearing. That is in the record. At the first post-conviction hearing? Yes, yes. That we do know, that's what was introduced after the discussion between ASA Daily and the court and counsel for Mr. Brown after the recess when they came back. That is correct, Your Honor, after that recess. That is, that we do know is what was introduced. It was, and prior to that of note, is the conversation where Attorney Bonacorsi, the first post-conviction counsel, had asked for a continuance because he was trying to get that judgment and sentence from Ohio and ASA Daily had objected vehemently to that continuance and the court granted, denied the continuance. I understand and then there was a discussion afterwards when he came back and said I looked at my file and I didn't realize it was certified and then he turned it and he turned it over to counsel for Mr. Brown. Right and he had that as note in his file. He got it back in January as we learned in the Ohio record, the Keenum record. Right. He also indicated at the time that he did not have that in the file prior to the moment that he asked for it from Ohio. He did not have it during the trial that this request was done as a result of Brown's counsel forwarding the request. In addition to that, I believe he also indicated and Mr. Brown's counsel indicated that there was no evidence and he was not suggesting that the state had withheld evidence. Those are the correct statements by Mr. Bonacorsi and ASA Daily in response to Mr. Bonacorsi's first 3851 motion. So, just getting to what my colleagues have been asking you about or talking about, can we just make it really simple? At the time of the trial, what information did anyone on the prosecution team have about Mr. McGuire slash Keenum? And that is the question that's chased. So, right. Not a question, but that's what I'm trying to find out. What do you know that they had? So, what we know is that FDLE had those fingerprint cards that this court has made reference to, which is in document 96-1, pages 31 to 50. As the court is aware, FDLE was one of the main investigative bodies in this case. And they had those cards which are dated from 1989 to 1990 in their possession as they admitted in their response. And this is obviously in the second. The fingerprint card was not under the name of Keenum. It was suggested that that was an alias. One of my concerns is that when the PSI was issued, so Mr. McGuire, Mr. Keenum, in 93, when he gets sentenced, because remember the trial doesn't happen until 96. When the PSI is issued and there's a whole backstory that he was from Chicago, that he was orphaned. I mean, there's nothing in the PSI to suggest that he is anybody other than McGuire. And that is based on what McGuire, McGuire Keenum would have told his PSI probation officer. But even that particular conviction, I looked at it. I don't know, maybe I missed it, but I didn't even see the Hollywood, the one that's with the fingerprints. The Hollywood Police Department. I didn't see that in the PSI either. Right. And in the fingerprint cards, you can clearly see, and you have to look at these fingerprint cards that FDLE had custody of all this time prior to trial until the second post conviction, is you put them together and you see that McGuire had the aliases of Keenum, which is his true identity. He had the aliases of Davidson, which you see tied in that NCIC inquiry. He has the alias of Michael. Right. The issue I have, I mean, I'm just speaking for myself. I'm just trying to figure out what people knew and when they knew. Is in 97, there's a fugitive task force. Okay. And in 97, there's a fugitive task force in Ohio that says Scott Jeffrey Keenum is still at large and they're going to try to find out where he is. And then in 2000, there is a notation that advised that defendants in custody in Florida are murder charges and was admitted in 1993. So it looks like from some time between 97, no one knows where he is. And then in 2000, there's a discovery made and then that's when the detainer is placed in Florida. That is a department correction. Yes, Your Honor. Eventually, but again, there's nothing in the record to indicate that he wasn't just using an alias. There isn't anything to show that Scott Keenum is in fact his real name as opposed to just an alias. I mean, I would say that in the first post-conviction, that's what Mr. Bonacorski believes. No, I'm just saying with respect to these particular records, even the ones that say, oh, now we're going to put a detainer on him. There isn't anything that shows that this in fact is Scott Keenum. Not in the detainer that, not in the record that Attorney Bonacorski attached to his motion, but he had to go further and he reached out to Ohio and to find out that Keenum had a warrant out for him out of Ohio for an escapee for an aggravated burden. No, I understand that. And he knew about that at the evidentiary hearing in 2001. He used that as his basis for his 3851 in November of 2000. Can I go back for a moment though to the fingerprint card? What is your point about the fingerprint card? Did the fingerprint card say on it Keenum? Yes. Okay. And that was in and was that, how would FDLE have known that Keenum was McGuire just based on the fact the fingerprint card said Keenum on it? So based on the fingerprint card, FDLE has the knowledge that he has all these aliases and that stems into- Well, let me stop you for a second. On the yes. So all of the aliases appeared together on the fingerprint card, including Keenum. Keenum and McGuire on the same fingerprint card. Right. And Davidson and Michael. Yes. Okay. And then, and let's just, if you could walk me through this, because the record is really, at least I didn't find it that clear on this. In addition to that, and at what point in time were there other things that you think were in possession of the prosecution team that should have, that should have told the prosecution team that Mr. McGuire was Mr. Keenum? So once, at least with respect to the FDLE card, they're charged with the knowledge that he has all these aliases. Then the prosecution team, the state and federal law enforcement agencies can run NCIC inquiries based on all those aliases. They did not based on the record before this court. Now, based on the case law, such as U.S. v. Otten, which is also cited in the respondent's three cases in their notice of supplement authority- The old Fifth Circuit case that's binding on us. Correct. And it's cited again in Hallman v. Wilson and United States v. Luis Gonzalez and United States v. Young. The crux of all those cases is that there is a duty, a Brady duty, for prosecutors to run federal or readily accessible databases upon their witnesses. And this wasn't just any witness. This was a co-defendant in the case. And had they run an NCIC inquiry, as you can see, the one that was run in 93, the year right after McGuire had been sentenced to 40 years, you can see with the names, you can get all the aliases, which then leads them to more information about their own witness. Can I ask you a question, though? At trial, and I think at the evidentiary hearing, counsel for Brown, who did the trial, testified. At trial, they knew he had aliases. They didn't know particularly about this particular alias. I'm going to say it's an alias because in the fingerprint card it says it's an alias, although now we know it's his true identity. Although I'm not sure, maybe we don't know his true identity. But defense counsel chose not to ask him about whether or not he had any aliases, even though he knew that. That's correct. He did not ask about his aliases at trial. And he addressed it in the first post-conviction evidentiary hearing. He didn't think it would do anything. But as we learned, but the problem is he didn't know. Because FDLE didn't turn over those fingerprint cards and there was no NCIC done on all those aliases and his true identity, Keenum, he didn't know. What exactly was the prejudice? So in this case, McGuire, Keenum is a key witness. The courts have said it again. They've called him the only witness. I understand that, but there's also other evidence, right? There's your client chose to trial. Your client also provided a confession to the FBI when he was detained for another crime. And then there's also a lot of physical evidence, including bloody footprints and other things, and also his fingerprints in the room where the deceased was found. So in this case, the prejudice is that Mr. McGuire or Keenum, he pointed the finger completely at Mr. Brown. In this testimony, he's the one who says that Mr. Brown came up with the idea to find the victim, to steal the truck. It was Mr. Brown's idea to kill the victim that he was just, didn't want to be part of it. The most he did is he told him, don't use the gun. In fact, Mr. McGuire also brought a gun to the scene and said that, you know, he's the only witness who said that he held it in the vehicle. And later on, he wanted to use it while the victim was asleep. These are all things from Mr. McGuire. Mr. McGuire, you know, sort of cleans his hands and says, I told him I didn't want to do anything with this, went and had a beer in the living room. And that's, you know, testimony is very damning in the sense that, and it's very important because it puts a lot of culpability and it makes Mr. Brown the mastermind, the main participant of this crime. And he shifts all his blame and his culpability onto Mr. Brown for the very reason that he wasn't here. The difference is that if Mr. McGuire slash Keenum, if the jury had thought that he was lying or wasn't trustworthy and otherwise found the other evidence not to be sufficient to prove that your client had committed the murder, that your client might have instead received a life sentence because the jury might have believed that he wasn't the one who actually did the stabbing. It does go definitely to credibility and to culpability of this case. I completely wholeheartedly agree Judge Rosenbaum. But also Mr. McGuire at trial testified that he in fact had lied to the police. That part of the testimony was when the police first came to him. He first said, I didn't have anything to do with it. In the beginning, yes. And then after about two and a half, three hours, he gave this recorded statement to the police, which was very self-serving and put all the blame on Mr. Brown. But that's what was testified in front of the jury. Can you talk about procedural default and why this matter isn't procedurally defaulted? So it's my argument that this matter is not procedurally defaulted because at the time of the first post-conviction proceeding, Mr. Bonacorski didn't have all the evidence we now have in the second post-conviction proceeding. It was not his fault. He believed that the state had given him all they had. I think he had reasonable reliance on what the state had given to him. And therefore, he had what he at the time is all he could raise based on what he had found and that one judgment of sentence. There was nothing more that that judgment sentence could give to him. It was not until later on in 2000, after the release of all the records, including the confidential and non-confidential records in 2007, that attorney Bonner had the factual predicate for the claim that before this court, a claim under Brady. I'm sorry. In the first post-conviction motion, Mr. Bonacorski requested relief in the form of a new trial based on newly discovered evidence, but didn't couch it in Brady and Giglio terms because as you say, he did not know that the state had withheld any information from him. That's correct. And he said as much on the record. It is not until you get the Keenum records that you see, you know, that there are this NCIC inquiry. It's not until you get the FDLE records in the second post-conviction do you see that they have these fingerprint cards. What do you think that the record of the judgment of conviction introduced at the first evidentiary hearing said or provided notice of, if anything? It was a one-sheet paper and it just showed that he had, it confirmed that he had been convicted of aggravated burglary out of Ohio. Did it say anything about the escape or no? That was what Mr. Bonacorski had found and had attached to his 3851 motion. You found it because there was a detainer placed. I mean, that's my understanding. That's correct. And the detainer is the one that talks about, I mean, it's a little weird too, because there was a mix-up in the computer that showed him as parolee, and then they had to fix that to indicate that, in fact, he was an escapee. So there are a lot of errors in this case, but that's my understanding is that he knew about it because of the detainer. Right, because after he, as this court also noticed, it was by happenstance that he looked at the Department of Correctional website and saw this detainer, and then he investigated more. Why isn't an appropriate resolution of this appeal to send the matter back to the district court for an evidentiary hearing on the procedural question of cause and prejudice, to find out what the state knew when it knew it, what Mr. Bonacorski or anybody else on Mr. Brown's side knew and when they knew it? I mean, there's precedent that stands for the proposition that cause in a Brady-Giglio scenario can be shown when the state suppresses the evidence that's at issue. But as I tried to explain in my first set of questions to you, I'm not sure that I know with any great certainty what anybody knew on either side of the case. Why isn't an evidentiary hearing an appropriate resolution in this case? Just send it back and let the district court figure out after hearing from everybody involved what was known, what wasn't known, what was turned over, what wasn't turned over, and then based on that, make a fresh determination on cause and prejudice. And, Your Honor, echoes the same concern the defense had at the Florida Supreme Court, and I agree. That is an appropriate remedy. My argument is based on the record we have from this court. I would argue that we have enough, but certainly those questions are still open. Yes, I agree. It is an appropriate remedy in this case. And to know, like I said, FDLE, who is part of the prosecutorial body, had those records. They didn't turn them over. The NCIC inquiries under the case law of U.S.C. Auten and the cases, and repeating the respondents' cases, says they had a duty to do those NCIC inquiries. They didn't. So they didn't do anything to try and seek the truth in this case, and I think the record shows that very clearly. But certainly, I think an evidentiary hearing to those matters, as to what the prosecutors knew, when they knew it, what trial counsel had, what he didn't have, is certainly a remedy that can be sought in this case. And I would like the court to note that Attorney Bonner, in her 3851 motion, wrote that the only thing that trial counsel Quarles had in his file was an outdated FDLE printout or report. I apologize. But she didn't find any NCIC reports. So there's evidence here that all trial counsel had was just an FDLE report. Nothing else. And he doesn't have it because, frankly, the state didn't do their grading obligations. They didn't do their inquiries or their databases. And FDLE did not turn over those records. And also, the NCIC records, these FBI rap sheets, are all available to the FBI, who are also a lead investigative agency in this case. So they are all part of the same prosecutorial body, all with the same goal, to prosecute McGuire and Brown. And they were witnesses at the motive. The FBI was not involved in investigating the murder case. They were involved in investigating a bank robbery, correct? Initially, yes. But they did... Because that's where he was involved in a bank robbery. You told them, I'm not just a bank robber. I'm also a murderer. That's right. And that's how the FBI became involved. But they were vital in the prosecution in this case for the murder. They came to testify at the motion suppressed. They came to testify at trial. They worked with FDLE to provide them the evidence of the shoes to get the... Correct. But that, again, it had to do with Mr. Brown. They were not involved with Mr. McGuire. But Mr. McGuire and Mr. Brown were part of the same indictment. And without the FBI, you don't have the case against Mr. McGuire either. The FBI started it with these purported... This wasn't Mr. McGuire in jail when Mr. Brown was picked up? Mr. McGuire, I believe, was picked up later in 93 on that open warrant. But I think Mr. Brown was already in custody. But it was in state court, not a federal conviction or a federal... He wasn't picked up on a federal warrant? Not Mr. McGuire, no. But at the end of the day, you need all these agencies to prosecute both Mr. McGuire and Mr. Brown. In fact, during the plea colloquy for Mr. McGuire's change of plea, Assistant State Attorney Michael Kalaitis, when he's giving the factual basis, references the FBI's work in determining the factual basis, and he calls them the police department. They were all involved. They pulled their efforts so that they could prosecute successfully both Mr. Brown and Mr. McGuire. Can I ask you a question? After the 3.850 hearing, when Mr. Brown had, I guess, reason to know that he needed to follow up, and that's why he ultimately sought discovery from the state, I guess. And when he actually sought discovery from the state, is there a reason why, for the length of that period? From when Attorney Bonacoste had the case to when Attorney Bonner came in? From when Mr. Brown would have been tipped off from the first evidentiary hearing, post-collateral, you know, the collateral hearing, that there might be additional evidence to when he actually sought that evidence? I think based on what I would submit to the court, based on what Attorney Bonacoste said at the conclusion of that evidentiary hearing, he believed the state had provided them everything they had, that they had met their Brady obligations, and had provided what they had on Kena. And that's not an unreasonable reliance, and we see that in that Strickler v. Green case, where they're talking about, if I may just finish my answer. Yes, please do. And also related to that, if you could explain why they later, why he later sought to open, you know, why he later sought further discovery, if upon the conclusion of the evidentiary hearing, he thought he had everything. And like, as I was saying, I submit to the court that he reasonably relied that that was all there was. In 2000, October of 2000, he, in February, he takes over as post-conviction counsel. In October, he files a demand for additional public records, including information on Scott Jason McGuire, Daniel Scott Davidson, Scott Stephen Michaels, and Scott Keenum, okay? Because he looks and he finds this detainer lodged by the Ohio Department of Corrections in February of 2000 under the name Scott Keenum. But after the evidentiary hearing, when Mr. McGuire, because that's how he testified, takes the fifth and says he's not going to answer, you know, what his real name, what his name is, just state your name for the record, and he takes the fifth. Why then did he not seek to get additional information on Scott Keenum? Based on what Attorney Bonacorski said at the evidentiary hearing is he had tried to reach out to Ohio and was not successful, and eventually, after that recess, the state of Florida, Assistant State Attorney Daley, provided him the item that he was looking for, and that was the judgment and sentence. And I understand that, but there wasn't anything in that judgment or sentence that showed that that wasn't anything other than an alias. So that's where is the due diligence on the part of Mr. Brown's counsel after the 2001 hearing, evidentiary hearing, when, you know, Mr. McGuire takes the fifth. Now, Attorney Bonacorski at that point, and I'm going by what he said of the record, is that's what he believed was the response of the state. He did, as you noted, file a 3852 request, which again, Attorney Bonner had again tried, was also the basis of her discovery demand in the second post-conviction hearing. As he said, he, that's what he asked for, the state turned over what he wanted, and that's what he believed. And as all the courts have noted, and Attorney Bonacorski said, he still thought Keenum was the alias of Mr. McGuire. And we know that's not true, and we know that's not true, and FDLE had evidence that showed that Keenum was one of his names, and the NCIC inquiries would have told you more about Mr. Keenum, and led you to the plethora of evidence that we found in the second post-conviction hearing, showing that he lied to his PSI officer, he lied at his plea hearing, he lied at trial, at his identity, where he was from, his family, all to curry favor. And at the end of the day, his lies ended up causing Mr. Brown to get a death sentence, because he painted him as the most moral, comfortable character in this case, I'm sorry, defendant in this case. And so, yes, Attorney Bonacorski, I think, based on what he said, thought that was all there was. And then, obviously, he withdrew from the case, as the court has noted, because he did not know about federal appellate work, and that's when he reached out, and we had Attorney Bonner come into the case, and she took over, and she investigated Keenum, did these discovery demands that were ignored by the state in the first 351 hearing, and after a court issued an order after hearing, that's when they finally turned over the FDLE request, the FDLE records, and then went to Ohio to get that order that led to the plethora of evidence that made for the factual predicate. So, if the reason for a delay is hard on the state for, and let's just stay for the sake of this argument, hypothetically, not argument, this question, hypothetically, that the reason that the state has delayed is because it's intentionally withholding information, but also some of the delay is on the defendant, and the resulting delay exceeds the one year. What do we do with that, and do you have any case or precedent that we could look to about how we do that? So, in this case, I would ask the court to look to perhaps Strickler versus Green, where the question was about cause and prejudice, and in that case, and I very much say in this case, the delay was due to the state's actions, or in this case, their failure to meet their duty to learn about their star witness, their co-defendant, the co-defendant in this case, and I mean, at the end of the day, yes, Mr. Bonacorski filed a 3852 request. He did the best he could, but there is a duty on the state of Florida on ASA Daily to learn about their co-defendant and McGuire's true identity. You have evidence that he's an escapee from Ohio, and all you do is do a single letter asking for a particular limited request about the aggravated burglary, but he never ran an NCIC on his real, on the kingdom name. But there's evidence, the record, are you suggesting that they knew about that at the trial, or that they learned about it at, in 2001 at the evidentiary hearing? Based on the FDLE, the fingerprint cards that are in the FDLE's custody, that evidence, I would report, was evidence they knew at trial, because FDLE is part of the prosecutorial. But the record, and it's undisputed, because counsel for Mr. Brown also agreed to this and made the same statement to the Florida Supreme Court. There is no suggestion that the state ever knew, prior to receiving those records from the Department of Corrections in Ohio, that Mr. McGuire also had a conviction as Scott Keenum for this aggravated burglary. Yes, he did make that statement, because based on what he was, what he knew at the time, that he was an escapee, there was no evidence, other than in 2001, when he received that information from the Department of Corrections in Ohio, that's when they learned that he was, in fact, an escapee. That's when, yes, there is no evidence in the record. The only evidence is that. Yes, I would agree that based on... Because we don't know what the state knew back at the time of trial. Because the FDLE was never put on in the second post-condition hearing. All right, Ms. Ahmed, thank you. We've taken you way beyond your time, but you've saved your full five minutes for rebuttal. I appreciate it. Thank you, Your Honor. Ms. Meacham. Good morning. May it please the court, counsel. We do know what the state knew at the time of trial, and what the state knew was the aliases of Davidson and of Scott Stephen Michaels. Who's testified to that? The NCIC. No, no, no. Who has testified as to what knowledge the prosecution had? Has any investigator, has any detective, has any FDLE official, has any assistant state attorney, has any assistant attorney general provided an evidentiary submission about what the state knew at the time of trial? There has not been an evidentiary hearing testimony. No, I'm not asking about an evidence statement. He has made that statement as an officer of the court. That's not testimony. A statement by a lawyer at a hearing, not under oath, is not testimony or evidence unless it's stipulated to, and there's no stipulation here. So my question is a basic one. You said we know. Based on the evidence that was submitted at trial and at the post-conviction. But that's a very limited record. Usually when you ask about someone's knowledge, you have that person testify about what they knew or didn't know at the time. But am I right that you're telling me, you're telling us, that not a single person from on the state side has testified about what the state knew about Keenum-slash-McGuire at the time of trial? They have not testified as to what they've known. What we have. And how in the world do we know what the state knew? You're drawing inferences. And they're drawing inferences. All you have are limited scraps of material in the record. And from that, you're drawing an inference. For example, Ms. Ahmed says that FDLE had a fingerprint card and never ran an NCIC check. Is that correct? That's not correct. They did run an NCIC check. And that was provided to defense counsel during post-conviction. No, no. We're talking about trial. And at trial. Right. So the NCIC was run at trial, which was done back in, let's see, it was done at trial. And it only had listed, and this is the Florida names that only came up, were Davidson, Michaels, and McGuire. So they didn't run the fingerprints? Well, they ran what they were supposed to do. The prosecutor under discovery demand is required to seek out records, which they did. They did an NCIC. I'm sorry to interrupt, but the problem is, as Judge Jordan has been talking about, there are these things in the record. So we know, for example, from the FDLE fingerprint card, that it said Keenum on it, in addition to McGuire. And I can clear that up. Sorry. That's okay. And so FDLE could have run, or someone on the prosecution team could have run NCICs, not only for McGuire, but also for the name Keenum. We don't know if they did that or not, because nobody's testified to it. You know what I'm saying? That's the problem. Well, the reason they did not is, if you look at the NCIC... They did not run them or did not testify? Did not testify. So we know that it was run back at trial, and these five arrests came up. The Holly Hill arrest did not show up in that original NCIC that was run back at trial. Are you saying that the NCIC was run on Keenum as well? No, it was run on... And that's the problem. Well, they didn't know about Keenum, is what I'm trying to say. Did they have a fingerprint card? Well, they didn't know about Keenum to exist to begin with. The only reason they found about Keenum... I'm so sorry to interrupt, but I want to make sure we're on the same page. Your colleague has said that the FDLE fingerprint card says the names McGuire and Keenum on the same card, as well as the other two names. Do you agree with that? I agree with that. Okay. You said that they ran the name McGuire, right? Correct. Okay. Did they run the name Keenum? And if they didn't, how do we know that they didn't, and why wouldn't they have? When they do an FDIC and an NCIC, it pops up with all their aliases. So when it was done back at trial, the only aliases that came up were those two names, not Keenum. FDLE ran another... That's exactly the problem, right? If FDLE has a fingerprint card that's got four names on it, that they think are the same person, and they run an NCIC, and only three names pop up, then either the fingerprint card is wrong, or the NCIC is missing one of the aliases. Why wouldn't you then run the fourth alias? Do you have any answer to my question, please, before you ask? Because there was no knowledge about Keenum at the time of trial. This Keenum came up afterwards when FDLE ran it again. How do we know that? I actually think that the PSI actually does not have... Nothing. There was nothing. PSI does not have the Hollywood Hills crime. And so, therefore, where does the probation officer get the list? From the NCIC. No one knew that at the time of trial. Keenum first popped up. I'm so sorry. I'm having a disconnect. It's probably me. I'm asking for some clarification. You agree that Keenum was on the FDLE fingerprint card, right? In 2003, yes.  2003. It was not there in 1997, like your colleague said? It was on the fingerprint card, but that arrest was not showing up on the FDIC-FDLE that was run. For whatever reason, it did not make it there. That's a different question. So it did exist at that time, yes. Okay. Let's just go through this step by step. In 1997, FDLE was in possession of a fingerprint card that had four names, including Keenum and McGuire. Is that right? It only had three names. It had Keenum, right. And it was under Davidson. It had Keenum and McGuire. And, right, the arresting name was Davidson. And then the aliases were McGuire and, I believe... Keenum. Keenum, yes. Okay. Do we know that if the NCIC had been run on Keenum in 1997, that the information wouldn't have shown up? If they had known that an alias was Keenum, it would have shown up? Okay. But they did not know that he was Keenum. The only aliases that came up were Davidson and McGuire. You are saying that they did not know. And I am telling you that there is a real problem, from my perspective, with that assertion, because there is not a single bit of evidentiary documentation from anybody on the state side about knowledge. Now, you are making an inference from the scraps of evidence we have in the record. That may be the right inference to draw. Or Ms. Ahmed's inferences may be the right ones to draw. This might be a different case from my perspective. If you had an investigator, a detective, or a prosecutor submitting an affidavit saying exactly what you said today, we did not know. We may have made a mistake. We only ran one alias. We had no idea that McGuire was Keenum. We did everything that we could, so forth and so on. There is nothing like that on your side of the case. And without that, we do not know what evidence the government had or did not have. Let me paint this for you. Given the record, the sparse record that we have, could the prosecutor have known and decided not to run an NCIC for Keenum? Is that a possibility? The NCIC that was run, as I said, if you look at it, it is run for McGuire, and then it pops up aliases. Those aliases were run also, and that is how they found out about the other Iranians. You are telling me they ran a Keenum? They ran a Michaels and a Davis. Then do not tell me that. You are having a bit of trouble with the facts in the record. We are asking you certain questions, and I know that they are sometimes difficult. But you are shifting to a separate hybrid answer on something else. Did they run an NCIC check on the Keenum alias in 1997? Not in 1997. No, the answer is no. There is nothing else to say about that. They ran it later, but they did not run it in 1997, right? They did not run an NCIC on Keenum. What they ran was a new NCIC on I believe Davidson. Why would they run it on one and not the other? Because that was the request of Ms. Bonner. Ms. Bonner was not around in 1997? Not in 1997. Later on when it was requested. I am not at the post-conviction stage. I am trying to find out what happened. In 1997, the only ones that were run were on those other two addresses, not on Keenum. Why? Because those were the only names that popped up on NCIC. You know that because you have spoken to a prosecutor who told you that is the reason or that is an inference you are drawing from the evidence we have in the record? Because that is what the prosecutor relies on. That is an inference you are drawing? Correct. You have no direct evidence of what the prosecutor did or why he did it? We know what discovery he did because he provided it. That is all we have. You have no evidence about his knowledge? No direct evidence about his knowledge? Testimonial evidence? No. We are in the record because the record is large and it is sort of all over the place. Is there a particular document that you can point me to that is the NCIS that the prosecutor, I think at the time, Davis provided to counsel Quarles? Yes, it is document 96-1 and it is on page 6. That is the original NCIC and FCIC. The Florida one only came back with two aliases. The NCIC came back with no aliases whatsoever. That is what the prosecutor had to work with. He ran the other two aliases and came back with those arrests. And that is what was provided? That was provided to the defense counsel and the PSI. All of the documents that were provided, there was a gold seal from McGuire which also only had the other aliases. So, none of the documents that were discovered during trial listed the name of Keenan. So, then when you go to document 95-1. Quarles received the PSI? An FDLE of the PSI as well, yes. So, then if you go to 95-1, page 211, this was at the request of Bonner for a new FDLE and they ran the FCIC again. And they ran it under Scott Stephen Michaels. Scott Stephen Michaels was also run at the time of trial. And nothing came up at the time of trial with the Holly Hill arrest. In 2003, when they ran it again, and you get more information as the years go, agencies provide more things. So, when it was run in 2003, the Holly Hill arrest, which is the fingerprint card, that is how she got it. She saw the arrest in Holly Hill and saw that the Keenan alias was used in the Holly Hill arrest. So, in looking at the NCIC at trial or the FCIC at trial and the FCIC in 2003, you have the five original arrests that the state attorney knew under those two aliases and then we have the Holly Hill. So, for whatever reason, that Holly Hill arrest did not show up under Michaels or under Davidson the original time. So, that Holly Hill arrest is under the Davidson alias that the state knew about, that defense knew about. And it never showed up. Let me ask you the same question I asked Ms. Ahmed. Why isn't the right result in this particular appeal to remand to the district court for an evidentiary hearing on cause and prejudice to find out what everybody knew and when they knew it? Because if you go back to actually the trial, what we're looking at is another alias. And at trial, defense trial did not even ask about the aliases. And that was... The question is not, on a Brady claim, the question is not, at the first step, is not what the defense did or didn't do. It's whether the prosecution complied with its obligation. And I think if you look through the record, I know there's no actual testimony from a prosecutor saying, I did not know. But we rely on the record. We rely on what the prosecutor did, which he followed the discovery rules. In this case, that Holly Hill did not show up. And there's a case out there where the prosecutor, and I submitted a supplemental, where there was a mistake in the NCIC that was run. And that wasn't imputed to the prosecutor, did that Holly Hill arrest and fingerprint exist at the time of trial? Yes, it did. Did the prosecutor know? I can't stand here and tell you that the prosecutor testified that he didn't know. But the documents that were provided at trial show that everything, PSI, Gold Seal, NCIC, FCIC, everything indicated two other aliases, not Keenum. The defense attorney at the post-conviction said- I thought the FDLE fingerprint card had Keenum as an alias. It's FDLE fingerprint, yes, under a Holly Hill arrest, correct. It doesn't matter. It doesn't matter because- It is. He was using an alias, and the alias was listed on a document that the prosecution had. Is that not right? The prosecution did not have that. FDLE, as a government agency, did. Is it? Okay, wait, wait, wait. You're telling me that the investigating agency is not imputed to the prosecution for Brady Giglio purposes? It is, but- Then whatever FDLE had for good, bad, better, worse, is imputed to the prosecution, right? That is correct. So the prosecution is imputed to have had knowledge of the FDLE card showing Keenum as an alias for McGuire and Davidson, right, or wrong? That is correct. Okay, that's a problem. But I just want to confirm, but the NCIC, because I'm looking at it now, only says name, Scott Jason McGuire, and the only aliases provided in the NCIC are Daniel Scott Davidson and Scott Stephen Michaels, and that's it. That's it, and then the prosecutor ran an NCIC on those aliases as well. So they did their due diligence on that. But not on the FDLE fingerprint card. They didn't run the aliases on that. The FDLE fingerprint card had Keenum as an alias for McGuire, did it not? Right, but they weren't running any fingerprint cards at the time. They didn't run, they didn't get any fingerprint cards at the time of trial. They only ran an NCIC, which is what they- FDLE had the fingerprint card at the time of trial, is that not right? Correct, under Keenum. Yes. Or Davidson and Keenum. And that's, for better or worse, whatever the legal effect is, that's imputed to the prosecution team, is it not? It is. And the prosecution did not, and this is my last question, and I'll let Judge Lagoa jump in. And the prosecution and FDLE did not run an NCIC check on Keenum, which was one of the listed aliases on the FDLE fingerprint card, is that right? That is correct. Okay. I guess my confusion perhaps is, so the alias, one of the aliases is Daniel Scott Davidson, right? Correct. But then when you look at the NCIC report, it doesn't have the Hollywood Hills. The Hollywood Hills arrest is not listed under Davidson. Even though that's an alias. Exactly.  It should have been there, and had it been on the NCIC- I guess the question is, so if you're the prosecutor and you get this, and I ran, and I don't just rely on the NCIC, and I run the aliases of Daniel Davidson and Scott Michael, would that come up then? It would have come up. I understand in 19, we're talking about 1996, so we're talking about pre-911, when I think there was a change really in how law enforcement communicated with each other federally and statewide. But in 1996, if I'm sitting, and I'm an ASA, and I'm sitting in my office, how do I make that request for Daniel Scott Davidson? It was done there. I mean, if you look at it, the alias of Scott Stephen Michaels pops up with all his arrests. It's all intermingled, so that's how the request is made. So you get Jason McGuire, these aliases come up. So you would only then request what you see in there? What is provided here, because that's what we've been told. How would you have discovered the Holly Hills arrest if it's not in here? We wouldn't have. Let me ask- We couldn't have. I think it's very clear. I think we're all very clear at this point that your position is, and NCIC was run on the three names, but not on Keenum, because at the time when you ran it, you ran it based on the NCIC, and then you ran the NCIC on the other two names that popped up. You did not run an NCIC on Keenum, and your position is you didn't run an NCIC on Keenum, because for whatever reason, nobody seemed to get around to observing that Keenum was an alias on the fingerprint card that had the other names on it. Is that right? Because we didn't know that fingerprint card existed because that Holly Hill arrest was not on the NCIC, SCIC, correct? Okay. We all understand that, okay? So the question is, right? The question is, what is the legal significance of the fact, given that we have no testimony saying what happened, only inferences that we're drawing based on the record? What is the legal significance of the fact that there is a fingerprint card that has the alias Keenum and McGuire on the same fingerprint card in the possession of FDLE, which is part of the prosecution team? That's the question, right? Your position is it has no legal significance, but we have case law, like Otten, which seems to suggest that it does. What is your best argument for why it doesn't? I do have, I provided the case law on that. Give me one minute. I provided U.S. Mark C. Markovich, Holman as well, and U.S. E. Louis Gonzalez. And Gonzalez would be the one most significant in this one. And in that case, it was discovered that the FBI rap sheet provided for defense did not reflect two convictions. And in that case, the court held that the rap sheet fully complied with Brady and the requirements of due process. And that's what we have here. But we don't. So that's a different question, right? The question there is, like, here we have in FDLE's possession this alias Keenum. It doesn't show up anywhere in anything that the state turns over. In Gonzalez, you know, the government ran the NCIC, and I guess two convictions didn't show up. But the government did what it was supposed to do. That doesn't explain here why it's not legally significant that Keenum was in FDLE's possession and the state did nothing with it. In light of there being no testimony, especially.  Again, because the state did what they were required to do. They did. How is that, though? Doesn't Auten tell us that if it's in the possession of the prosecution team, which extends to the law enforcement agencies or whatever, that the prosecution is charged with knowledge of it and having to follow up on it? I mean, isn't that what Auten tells us? It does. But in this case, this wasn't a fact of not doing their due diligence. This really was a mistake, is that back then that record was not. I understand your position is it was a mistake. And maybe that is legally significant. Maybe it's not under Auten. But before we even get to that question, we don't have any evidence in the record to show that it was a mistake. You see what the problem is? I do understand that. Even if you were to say, OK, at the time of trial, prosecution should have done their due diligence. They should have known Keenum existed as an alias and they should have provided that to defense counsel. We still need to get to was that even material in this case? And it's not. That conviction, that alias does not change the outcome of this trial. The trial with regard to guilt, innocence, I completely agree with you. But that's not all there is in a capital case. Both of them could have been equally guilty of participating in a murder. One of them could have been more culpable morally or legally than the other because he was the one who inflicted the stab wounds. And the other one was guilty, for example, of felony murder. Right. So now you're looking at credibility issues here. Yes. Right. And his credibility was never tested with regards to this prior conviction and escape. It wasn't tested to either of the other aliases as well. Because the other aliases didn't matter in the way that this one mattered. Any lawyer worth his or her salt in a capital case would have known that the main prosecution witness against his client was a felon who had escaped from custody in Ohio and had pled guilty to a reduced sentence, second degree murder, would have impeached him, would have attacked his credibility with that. Do you disagree with that? I don't disagree with you. And I'll give you that. So even if we were at trial and the jury knew about the escape, every single one of the aliases, the burglary conviction, and had to weigh that and his credibility against the confession, the evidence at trial, they still would have come back with the same outcome. On guilt and innocence or on penalty? On guilt and on penalty. I agree with you on guilt because he was involved in the murder. And either at the very least under felony murder theory, he would have been guilty of the murder just like Mr. McGuire, Mr. Keenum was. But penalty is a whole different story. I mean, the state sought the death penalty against him because it thought that against Mr. Brown because it thought that he was the actual physical murderer, right? Right. And that's what was testified at trial. Correct. What if it turned out that it was Mr. McGuire, Mr. Keenum who was the actual murderer? There's nothing in there. These convictions do not change the facts of the case. They do not change Mr. Brown's confession. But Mr. Brown testified that he did not remember what he told the FBI. And that may not have been credible to the jury. But that was never juxtaposed against a credibility assault on Mr. McGuire, Mr. Keenum. And his testimony might have been viewed in a very different light had Mr. Keenum's problems been exposed in front of the jury. It's one thing to say. If you have a witness who testifies to X and is not really impeached with anything, except the fact that he pled guilty to second degree murder, but doesn't have anything else, that's it. And then you have the person who gave a confession. That's one way of looking at the testimony. But if the person who gave the confession says he doesn't remember what he told the FBI and the other person is under severe credibility assault for what he did. And by the way, not just that he was a felon and an escape felon, but that he had lied to the police and to the authorities and to the court to get the second degree murder plea. And he had kept his identity secret from everybody. He had continuously lied. Why wouldn't a jury think that he's prone to lie again? Well, I think the post-conviction court and the Florida Supreme Court addressed that as well. And they even stated that even if the jury had heard that he was an escapee and heard about the other convictions and the alias, it would not have changed the outcome. But they did that only under a newly discovered evidence theory in which you have to show that the outcome would have been different. And that's a very different materiality standard than Brady and Giglio. The Florida Supreme Court never addressed a Brady-Giglio claim on the merits. Is that right?  Okay. Those are different materiality standards. The newly discovered evidence test in Florida requires evidence that there would have absolutely been a different result. That's not the materiality standard under Brady and Giglio. So you can't rest, I don't think, on the Florida Supreme Court's determination on a different claim that's not a Brady-Giglio claim. That's correct. But I think even under the- The district court never addressed the merits either. Nobody's addressed the merits of the Brady claim because they found procedural default. They also relied on the record and- The record for what? As far as what was provided. I'm not saying that the state withheld any information or committed any Brady or Giglio violations in this case. What I'm saying is even if you were to find that these documents were withheld, it's still under Brady, it's not material to change the outcome. Not even on the penalty. Not even on the penalty side of it. And again, if you look at the trial- You're asking us to address that issue alternatively? As far as? The merits of the Brady-Giglio claim? No, I'm not. I'm saying there was- You know, if we do that, we're not doing it by deference. We're not. Because the state courts never addressed that claim on the merits. What I'm saying is if you look at the record, there was no withholding of evidence. And I believe with the post-conviction, counsel keeps saying that discovery wasn't turned over, discovery wasn't turned over. During a post-conviction, it's not discovery. It's a public records request. And at that time, the only public records request that appellate counsel made was for the state to run a new NCIC on James McGuire again, which the state was not allowed to do, nor is it proper under a post-conviction motion, because the state is not required to produce new evidence. It's required to give you evidence that's already in existence. Why didn't the state stipulate that McGuire was Keenum at the post-conviction hearing if it knew that was the case? They did not know. Well, then why in the world would they step in and tell the state judge to protect Mr. McGuire by appointing Fifth Amendment counsel for him, and then expressly stating in the middle of the hearing that it wasn't immunizing him, and then anything that he said that went against his prior plea would be possibly used against him? You could have protected Mr. McGuire's Fifth Amendment rights and still stipulated as a matter of fact that McGuire was Keenum. You're telling me that the state attorney, the assistant state attorney did not know at the time of the first state post-conviction hearing that McGuire was Keenum? No, no one knew. How do we know that? Again, there's no evidence, right? Because during the actual evidentiary hearing, Bonacarsi said that he was not accusing Daly of having had the conviction, and he believed it was an alias. No one at that time thought... He does not know what the prosecution knows. He's acting on what he's received and what he believes the record shows, and he's not about to accuse another attorney of unethical misconduct without having the goods. But we don't have the state attorney telling us. What do you think if put under oath at a hearing, you think ASA or former ASA Daly would say that he did not know at the time of the evidentiary hearing that McGuire was in Keenum? You're confident that's what he would say? I am confident that's what he would say. Okay, let's put it to a test. I'm just saying if you look at the evidence, the defense appellate counsel is the one that filed the post-conviction motion with the newly discovered evidence that he found of a conviction in Ohio. Rather than subpoenaing the Ohio court or trying to get records, public records from Ohio, Bonacarsi did not do that. All he did was write the motion and do no public request from Ohio. That's on Bonacarsi. During a 3.851, it's not the state's burden to go out there and do a records request. It's on defense counsel. So at that time, he knew of the conviction. And as Daly said, this was after he received the 3.851 motion and saw what the newly discovered evidence was that he decided to see about this conviction. And that's when he got back. And that is all. As you can see later on, when Bonner tries to get these Ohio documents, the trial judge here files an order releasing the records, and Ohio comes back and goes, no, no, no, that's not how it works. Defense counsel actually had to get a judge in Ohio to release the records to Florida. So the allegation that Daly may have had all these documents from Ohio is absurd because there's no way he could have gotten them, if you can see later on, what one had to do to get those records. So the only record that Daly had was the same record that the public counsel would have had. How did he get the record from Ohio? He called them up and asked for it. That's very different than having to go to a court and ask for it, right? I thought he sent a letter. It was just a conviction. To whom? To whom did he send it? To the court up in Ohio. To the, I believe, the attorney general's office or the ASA. But this is something that defense counsel could have done as well. You're saying they had to go to a court, but that's not what ASA Daly did. No, as far as all of these Kenan documents that were requested later on, that's different. This is for the evidentiary hearing. He asked for a certified copy. That was it. That was all that was provided. That's all he asked for. It was just a certified copy of a judgment. Right, because that's what the allegation was in the 3.85 motion. Ms. Meacham, we've taken you way beyond your time and we thank you for your help. If you'd like to wrap up, you can. I would. I would just say that, again, this case is, or the claim was procedurally barred because it's based on independent state grounds. And I don't believe that Brown can meet the cause and prejudice in this case. As far as cause, defense counsel had every opportunity to get those documents even before the evidentiary hearing. Once he filed that motion, or once he went through the public records request, he could have requested all of the documents from Ohio and he would have had that information back then. At the evidentiary hearing when the certified conviction was given by Daly, again, he could have requested records and he did not. Any cause in delay was caused by Brown himself. And as far as prejudice, again, given the testimony by McGuire that corroborated the evidence in the case, the fingerprints on the veer, the bloody footprints, and Brown's own confession, the outcome in this case would not be different. And we ask that you affirm the lower court's order. Thank you. Thank you very much. Thank you, Ms. Ahmed. After hearing all these arguments, I think the question is, was there a diligent search done by the state of Florida and the entire prosecutorial body regarding Kena? Based, and I agree with the court, what we have are records. We have parts of NCIC records. We have an FCIC, which was only done on McGuire. And as we know from the record, is when McGuire escaped from Ohio and he came into Florida, he started with his alias of Scott McGuire. At some point in Florida, he used the alias of Michaels. At some point, he used the alias of Davidson. Nowhere in there was an allegation of Kenam. However, as the court has noted as well, FDLE had Kenam. They knew they were all associated together. They had the fingerprints. So at the end of the day, they knew of Kenam prior to trial. And when we talk about the PSI and the probation report, I'd submit to the court- You say that too, but what we know is they knew about the possibility of a Kenam. It was an alias. Yes. We don't know if they really knew what that meant or whether they just failed to perform a diligent search as some of our cases suggest they had an obligation to do. We just don't know that. I agree. There's no testimony. As I believe Council of Respondent, we're going through these records that we have before us.  And with regards to PSI, and again, we don't have testimony, but just sort of making inference, they went with what McGuire told him. He talked about his family in that PSI report where he lied. He said that his family had died in a car crash and he was in foster care. When you get those Ohio records later on, you admit that you concede that the PSI doesn't have the Holly Hills arrest. I agree with Your Honor. I don't believe it was there. But at the end of the day, as Judge Jordan said, yes, we don't have testimony. I don't know where the probation officer got that information, the PSI we can assume, but I don't know. We could assume they got it from the NCIC, but we don't know. I agree, Judge Lugolo. I can just tell you parts of it we can certainly say came from Mr. McGuire and were very favorable to the sympathetic person who, you know, was in foster care, lost his parents, which we know later on is not true at all. He lied about his parents' names. We know all of that's not true. We learn all of that in 2007 once all the records are released. We know that he had a much more lengthier criminal record in Ohio once the Ohio records were released. We learn all of that later on. So he definitely lied his way, as this court has noted, after he escaped in the state of Florida. And you can see that from 89 to 93. And they had all those fingerprint cards every time he got arrested. But the state of Ohio didn't track him down until 2000, even though there were fingerprints, correct? So there is an indication in the Ohio records. There is, goodness, I believe it was about 97. There is a record in document 99-1, I believe it's page 7 or page 9, I apologize for my memory, where there is a memo to the ward in Ohio where the FBI, and as I've argued, I believe the FBI is also part of the prosecutorial body in this case, and along with Ohio Bureau of Criminal Investigation had found a hit for Davidson, tying him to Keenum in Daytona Beach. And they used the fingerprint cards for that very purpose. And they were able to tie, and there was an indication in the memo that a warrant should be issued. So I'd argued to the court that, I believe it was 97, I apologize. I cannot remember the year. It was a warrant issued? I didn't see a warrant in there. No, that was what the memo said. So definitely the FBI in this case knew that Davidson, or at least knew that Keenum, who was using the alias Davidson, was in Daytona Beach in Florida, based on that memo. I guess the aspect that's troubling for me is that even as we sit here after an hour, we still don't really know if Keenum is really Keenum. I submit to the court, yes, perhaps based on this record, but certainly when Attorney Bonacorski did his initial 3851, he attached that Department of Correction printout, and that has a picture of McGuire with Mr. Keenum on that DOC printout. And he is a distinctive looking gentleman. I understand that, but we still don't know that he actually is, in fact, Keenum. There's nothing in the evidence, or there's nothing in the record that says who is... Well, what his true identity is, right? There's a fingerprint card. Is there one set of fingerprints for four names or three names, Keenum, McGuire, and Davidson, or whoever the third one was? Each arrest has their own individual fingerprints that were taken based on the cards that are in the record. And then there's the section where they have the name of the arrestee and then all the aliases associated. Right, and so what I'm saying is, is his name, is the name Keenum and the name McGuire associated with the same set of fingerprints? Yes. I was just saying, we don't really know who his true identity is. There's nothing in the record to say what's his true identity. I mean, I would argue that there is, but I understand the court's concern based on the record. That can be resolved by an evidentiary hearing too? I agree, Judge Jordan. Assuming my theory prevails. I agree, Judge Jordan. An evidentiary hearing can definitely clear up all those questions. Okay, you're over your time, but you can wrap up too. Well, at the end of the day, Your Honor, it's really important that the truth is out in this case. And the truth is that McGuire lied. He lied all throughout this case. And we would ask the court, he lied all throughout his case. He benefited from those lies. He got a windfall plea deal. And he got a letter congratulating him on how well he did from the assistant state attorney in this case, which he was able to use and provide to his correction officer. He got a windfall, all at the cost of Mr. Brown's life. So I'd ask the court, I thank the court first for all these oral arguments, for the discussions. I recognize we do have issues and an evidentiary hearing would be appropriate. Or perhaps this court would consider a returning the district court's order and remanding for a new penalty phase in this case, because there is a question of culpability. That would mean granting relief to you on your Brady Giglio claims and no one has resolved that claim on the merits yet. Neither the Florida courts nor the district court. I agree, your honor. So I pray at the end of the day, this court will grant Mr. Brown some relief and that we do find the truth. Thank you very much. Thank you very much, Ms. Ahmed. Thank you very much, Ms. Meacham. We're in recess.